# UNITED STATES COURT OF APPEALS FOR VETERANS CLAIMS

No. 99-515

ABRAHAM THOMPSON, APPELLANT,

v.

HERSHEL W. GOBER,
ACTING SECRETARY OF VETERANS AFFAIRS, APPELLEE.

Before KRAMER, *Chief Judge*, and FARLEY and HOLDAWAY, *Judges*

## ORDER

The appellant, Abraham Thompson, appealed a December 24, 1998, Board of Veterans' Appeals (BVA or Board) decision that denied him recognition as a former prisoner of war (POW) for Department of Veterans Affairs purposes. The Court by single-judge memorandum decision affirmed the December 1998 BVA decision. *Thompson v. West*, Vet. App. No. 99-515 (May 19, 2000) (mem. dec.). The appellant filed through counsel a motion for panel decision.

The Board is required to provide a written statement of the reasons or bases for its findings and conclusions on all material issues of fact and law presented on the record; the statement must be adequate to enable a claimant to understand the precise basis for the Board's decision, as well as to facilitate review in this Court. *See* 38 U.S.C. § 7104(d)(1); *Allday v. Brown*, 7 Vet.App. 517, 527 (1995); *Simon v. Derwinski*, 2 Vet.App. 621, 622 (1992); *Gilbert v. Derwinski*, 1 Vet.App. 49, 57 (1990). To comply with this requirement, the Board must analyze the credibility and probative value of the evidence, account for the evidence that it finds to be persuasive or unpersuasive, and provide the reasons for its rejection of any material evidence favorable to the claimant. *See Caluza v. Brown*, 7 Vet.App. 498, 506 (1995), *aff'd*, 78 F.3d 604 (Fed. Cir. 1996) (table); *Gabrielson v. Brown*, 7 Vet.App. 36, 39-40 (1994); *Gilbert, supra*.

In a recent opinion, the mandate for which was issued after this Court's single-judge memorandum decision in this case, the U.S. Court of Appeals for the Federal Circuit stated that 38 U.S.C. § 7261(a), (a)(4), and (c) "are consistent with the general rule that appellate tribunals are not appropriate fora for initial fact finding." *Hensley v. West*, 212 F.3d 1255, 1263 (Fed. Cir. 2000). Thus, this Court "may remand if it believes the [Board] failed to make findings of fact essential to the decision; it may set aside findings of fact it determines to be clearly erroneous; or it may reverse incorrect judgments of law based on proper factual findings; 'but it should not simply [make] factual findings on its own.'" *Id*. at 1263 (quoting *Icicle Seafoods, Inc. v. Worthington*, 475 U.S. 709, 714 (1986)).

In the instant case, the Board erred in failing to consider a 1993 "Former POW Medical History" report in which the appellant presented material evidence that he had experienced physical and psychological hardships while being detained in Switzerland during World War II. *See* 38 U.S.C. § 101(32)(B); 38 C.F.R. § 3.1(y)(2)(i) (1999); *Young v. Brown*, 4 Vet.App. 106, 109 (1993). In light of *Hensley*, the Court is compelled to conclude that a remand is necessary here in order for the Board to consider that evidence in the first instance and to provide an adequate statement of reasons or bases. *See* 38 U.S.C. § 7104(d)(1); *Allday*, *Caluza*, *Gabrielson*, *Simon*, and *Gilbert*, all *supra*.

Upon consideration of the foregoing, it is

ORDERED that the appellant's June 7, 2000, motion for panel decision is granted. The May 19, 2000, memorandum decision is withdrawn and this order is issued in its stead. It is further

ORDERED that the December 24, 1998, BVA decision is VACATED and the matter is REMANDED for readjudication consistent with this order.

DATED:          November 22, 2000                              PER CURIAM.


HOLDAWAY, *Judge,* dissenting: I respectfully dissent with the holding of the majority for two reasons. First, I do not believe that the Board erred by failing to specifically reference the 1993 POW report. While the Board is required by statute to give adequate reasons or bases for its decision, this Court has never held that the Board is required to discuss each and every document in the record. If every piece of evidence had to be discussed in the Board's decision, that decision would be as voluminous as the record itself. Some discretion and summarization is necessary and thus, certain evidence need not be discussed if it would have no impact on the decision. In *Soyini v. Derwinski*, 1 Vet.App. 540 (1991), this Court reasoned:

> Although the BVA did not articulate the "reasons or bases" for its decision as distinctively or as clearly as contemplated . . . the Court is able to rule on the merits of the appeal based on a review of the record. It is true . . . that the reasons or bases requirement set forth by 38 U.S.C. § 7104(d)(1) and more fully discussed in [*Gilbert v. Derwinski*, 1 Vet.App. 49, 56-57 (1990)], is one requiring strict adherence. However, strict adherence does not dictate an unquestioning, blind adherence in the face of overwhelming evidence in support of the result in a particular case. Such adherence would result in this Court's unnecessarily imposing additional burdens on the BVA and DVA with no benefit flowing to the veteran. This we cannot do. *See* 38 U.S.C. § 7261(b).

*Id.* at 546.

2

In this case, the Board adequately summarized its findings as to the factual circumstances surrounding the appellant's period of internment. The Board's findings were drawn solely from the appellant's own sworn testimony in which he stated that he had not experienced physical and psychological abuse. It would serve no purpose for the Board to dishonor this veteran who indisputably suffered severe hardships for his country during both his combat service and his period of internment by questioning his veracity in completing the 1993 POW questionnaire. The mere fact that the Board failed to account for several penmarks in the record simply does not deprive it of a plausible basis in the record for its decision. Nor can that putative error change the appellant's own sworn testimony concerning the circumstances surrounding his period of internment. Thus, I believe that under the Court's current case law, the Board's decision should be affirmed.

In the alternative, I think the Court should reexamine its standard of review for the adequacy of the Board's reasons or bases for its decision. The Board's decision does not contain a summary of all the evidence or record. Rather, the Board discusses only the evidence it finds material to its decision. The Board's selection of which documents it finds material to discuss is in itself a finding of fact. Of course, this Court reviews the Board's factual findings under the "clearly erroneous" standard of review. *See, e.g., Gilbert*, 1 Vet.App. 49. Under this analysis, I would hold that the Board's factual finding in selecting which evidence to include in its statement of reasons or bases was not clearly erroneous. The record in question was properly before the Board for consideration but the Board evidently found that the document was not of such weight as to warrant discussion. The Board accurately described and summarized the evidence of record and provided a conclusion which was supported by a plausible basis in the record. This is classic fact finding to which we must defer. Apparently, the Board found that the other evidence of record submitted by the appellant which overwhelmingly contradicted the form in question was more appropriate to discuss and rely upon in summarizing its findings. Given the nature and form of the other evidence, I cannot conclude that the Board's selection of documents which it discussed and summarized in the reasons or bases for its decision and its avoidance of the thorny issue of the accuracy of the 1993 POW report was clearly erroneous. In sum, I do not believe that the Board erred by failing to account for this piece of evidence under either the Court's current case law or under the alternate standard I offer in this dissent.

Second, even if the Board's failure to discuss this piece of evidence constituted "error," I believe that this error would fall squarely within the confines of nonprejudicial error. 38 U.S.C. § 7261(b). Before reaching the issue of whether the Board's alleged error falls under this rule, I believe that the appellant has presented a genuine issue of whether this Court may still apply this rule in light of several decisions by the U.S. Court of Appeals for the Federal Circuit (Federal Circuit). The majority apparently believes these cases preclude *any* review of the facts. The appellant contends that the Court must remand the matter because the Court is prohibited by statute from reviewing the 1993 POW report in the first instance. *See Hensley v. West*, 212 F.3d 1255 (Fed. Cir. 2000). In *Hensley*, the Federal Circuit cited 38 U.S.C. § 7261(c) to hold that this Court cannot review the Board's factual findings do novo. *Id.* at 1263. It further explained:

The statutory provisions are consistent with the general rule that appellate tribunals are not appropriate fora for initial fact finding. Thus, the Supreme Court has held that when a court of appeals reviews a district court decision, it may remand if it believes the district court failed to make findings of fact essential to the decision; it may set aside findings of fact it determines to be clearly erroneous; or it may reverse incorrect judgments of law based on proper factual findings; "[b]ut it should not simply make factual findings on its own."

*Id.* (citations omitted). Furthermore, the appellant's argument is also bolstered by several recent Federal Circuit decisions which have abrogated to some degree this Court's interpretation of the rule of nonprejudicial error. *See Elkins v. Gober*, _ F.3d _, No. 00-7023 (Fed. Cir. Oct. 13, 2000); *Nolen v. Gober*, 222 F.3d 1356 (Fed. Cir. 2000); *Winters v. Gober*, 219 F.3d 1375 (Fed. Cir. 2000).

While the appellant is correct in asserting that the Court is prohibited by 38 U.S.C. § 7261(c) and the recent Federal Circuit decisions from conducting a de novo review of the Board's findings of material fact, the Court must necessarily examine the facts of the case to reach its ultimate conclusion as to the presence or absence of prejudicial error. Furthermore, I believe that there are many situations where the Court must review the facts of the case independent of the Board's findings in order to fulfill its role as an appellate court. Sometimes, there is a fine line between conducting a trial de novo and fulfilling this Court's statutory responsibilities to adjudicate an appeal. In short, this Court must, in accordance with the mandate of Congress, *review* the Board's fact finding. To review the Board's fact finding is not fact finding in and of itself.

Since its inception, this Court has found it necessary to engage in fact finding on issues in certain instances, especially on issues which could not be determined by the Board in the first instance. One of the most common instances where the Court is required to find facts in the first instance is on the issue of nonprejudicial error. *See* 38 U.S.C. § 7261(b). In these situations, the Board obviously cannot render its own factual findings in the first instance, otherwise the error would have been obviated. Nonetheless, the Court is required by statute to consider whether the Board's fact finding was prejudicial to the appellant. That can only be done by looking at the error in the context of the entire record and making a qualitative judgment that the error did or did not have an impact on the decision. In short, the Court must "weigh" the evidence in its totality. In some cases, such as the present appeal, the directive in section 7261(b) to "take due account of the rule of prejudicial error" simply cannot be carried out without so doing. To fail to do so would be to read the prohibition against de novo fact finding in section 7261(c) to negate the requirement of section 7261(b), which the Court may not do. *See Saunders v. Secretary, HHS*, 25 F.3d 1031 ("it is a settled rule of statutory construction that a statute is to be construed in a way which gives meaning and effect to all of its parts" (citing *United States v. Nordic Village, Inc.*, 503 U.S. 30, 36 (1992))).

While I agree with the Federal Circuit that this Court is not in the business of conducting trials de novo, there are instances where the Court must necessarily engage in some fact finding on issues which could not have been presented to the Board, including the issue of harmless error.

4

Whatever the Federal Circuit meant in *Hensley*, it could not possibly have meant to repeal 38 U.S.C. § 7261(b). It has no power to do so. The appellant's arguments, which flow logically from the Federal Circuit's analysis would, in effect, interpret *Hensley* to do just that. Nonetheless, I believe that this Court must interpret that statute consistently with Congress's full intent and meaning in order for this Court to perform its role effectively.

Having decided that 38 U.S.C. § 7161(b) retains its validity after the recent Federal Circuit's decisions, I will now turn to my interpretation of the meaning of that statute. Section 7261(b) states: "In making determinations under subsection (a) of this section, the Court shall take due account of the rule of prejudicial error." Although the Court has applied 38 U.S.C. § 7261(b) to hold that errors of the Board are not prejudicial, the Court has never defined what constitutes nonprejudicial error generally, but rather has limited its discussion to the facts of the particular case at hand. Moreover, the Federal Circuit has not yet discussed this statute in connection with veterans benefits cases. Although I am mindful of the "uniquely pro-claimant" context of the veterans benefit system, *see Hodge v. West*, 155 F.3d 1356, 1362 (Fed. Cir. 1998), there is certainly nothing in the statutory framework indicating that the rule of nonprejudicial error in the context of veterans benefits cases is any different than it is in any other federal appellate court, where it is referred to as the harmless error rule.

The "rule of prejudicial error" referred to in 38 U.S.C. § 7261(b) is derived from Rule 61 of the Federal Rules of Civil Procedure. This rule states in part, "No error . . . by the court . . . is ground[s] . . . for setting aside a verdict or for vacating, modifying, or otherwise disturbing a judgment or order, unless refusal to take such action appears to the court inconsistent with substantial justice." In describing the purpose behind this rule, the U.S. Supreme Court has stated:

> We have also come a long way from the time when all trial error was presumed prejudicial and reviewing courts were considered citadels of technicality. The harmless-error rules adopted by this Court and Congress embody the principle that courts should exercise judgment in preference to the automatic reversal for "error" and ignore errors that do not affect the essential fairness of the trial.

*McDonough Power Equipment, Inc. v. Greenwood*, 464 U.S. 551, 553 (1984) (citations and internal quotation marks omitted). As for interpreting the rule itself, the Supreme Court held, "[I]f one cannot say, with fair assurance, . . . that the judgment was not substantially swayed by the error, it is impossible to conclude that substantial rights were not affected." *Kotteakos v. United States*, 328 U.S. 750, 765 (1946).

In reviewing harmless (or nonprejudicial) error in this context, the Federal Circuit has held that an error is not harmless when it "reasonably affected the outcome of the case." *ATD Corp. v. Lydall, Inc.*, 159 F.3d 534, 549 (Fed.Cir. 1998). Other circuit courts have relied on similar tests. *See Jordan v. Medley*, 711 F.2d 211 (D.C. Cir. 1983) (holding that the harmless error "inquiry involves an assessment of the likelihood that the error affected the outcome of the case"); *see also*

*Schrand v. Federal Pacific Elec. Co,* 851 F.2d 152, 157 (6th Cir. 1988) (applying *Jordan* standard). In further, the consensus of federal courts also agree that:

> Application of this test is highly sensitive to the unique context of the particular case, including the one-sided or closely balanced nature of the evidence bearing upon the issue which the error arguably affected, *see Corona v. Pioneer Life Ins. Co.*, 357 F.2d 477, 480 (5th Cir. 1966); and the centrality of that issue to the ultimate decision, *see Charter v. Chleborad*, 551 F.2d 246, 249 (8th Cir. 1977).

*Jordan*, 851 F.2d at 157; *see also ATD,* 159 F.3d at 549 (noting that a number of factors have guided the court in their determinations of whether error is harmless, including whether the evidence in question was a primary component of the case); *Schrand*, 851 F.2d at 157 (citing *Jordan)*. Again, the policy behind the harmless error rule is clear:

> These rules are based on the sensible concept that a new trial should not be granted because of an error that inflicted no harm. Perfection is an aspiration, but the failure to achieve it in the judicial process, as elsewhere in life, does not, absent injury, require a repeat performance.

*Miles v. M/V Mississippi Queen*, 753 F.2d 1349, 1352 (5th Cir. 1985).

In translating that guidance into the veterans benefits context, the Court must be cognizant of the lower burden of proof that claimants seeking veterans benefits enjoy over civil litigants. While in other civil cases, a party must generally prove its case by a preponderance of the evidence, in veterans appeals, the claimant is granted the "benefit-of-the-doubt" standard of review. *See* 38 U.S.C. § 5107(b) ("When . . . there is an approximate balance of positive and negative evidence regarding the merits of an issue . . . the benefit of the doubt in resolving each issue shall be given to the claimant.")

Applying this analysis to the facts of this case, it is not reasonable to conclude that had the Board accounted for this piece of evidence, its decision would have been different in the face of overwhelming evidence to the contrary. In my opinion, if it is error, it is exactly the type of technical error contemplated by the Supreme Court in *McDonough* and applied to this Court by Congress in enacting 38 U.S.C. § 7261(b), which does not merit a "repeat performance" by the Board. In my opinion, the issue before this Court is whether the Board's failure to discuss the August 1993 POW report was prejudicial to the appellant. The issue before the Board was whether the circumstances the appellant endured during his period of internment in Switzerland were comparable to the circumstances that POWs endured while incarcerated by enemy governments. "Such circumstances include, but are not limited to, physical hardships or abuse, psychological hardships or abuse, malnutrition, and unsanitary conditions." 38 C.F.R. § 3.1(y)(2)(i). In the 1993 POW report, the appellant checked the appropriate box to indicate that he was subjected to physical and psychological abuse as well as extreme exposure to the cold. His penmarks went unsubstantiated and were completely contradicted by his own sworn testimony. In March 1984, the appellant

completed a POW report in which he stated that he was adequately provided and that he did not suffer from any physical or psychological abuse. In July 1988, he testified that he was interrogated by Swiss officials but did not state that he was subjected to privation or abuse. In July 1998, the appellant testified at a personal hearing and did not state that he was subjected to either privation or abuse. In August 1998, the appellant testified that he had been subjected to some psychological abuse but noted that he received adequate food and medical attention. He also did not report any physical abuse. In reaching its decision, the Board sensibly did not get into the question of which of the appellant's 1993 POW report was truthful. Rather, the Board relied on the appellant's most recent testimony which was in the more descriptive narrative form rather than a "check the box" format of the POW reports to conclude that the circumstances surrounding his period of internment were not comparable with that of POWs.

After a review of the record on appeal, I agree with the Board that the overwhelming nature of the evidence on appeal supports the Board's finding that the circumstances of the appellant's period of internment did not compare to those of a POW camp, and therefore, any failure of the Board to discuss the 1993 POW report was nonprejudicial. *Cf. Soyini*, 1 Vet.App. at 546 (Court affirmed Board's decision despite error "in face of overwhelming evidence in support of the result in a particular case.") As the Board found, there is no evidence of record that the appellant suffered from physical hardships or abuse, malnutrition, or unsanitary conditions. He testified that he was confined to the town of Daubos, but that he ate the same food as and lived comparably to the Swiss residents. Even if the Board had considered the August 1993 POW report in which he checked the box to indicate that he was subjected to physical and psychological abuse, there simply is no likelihood that this evidence would convince the Board that the hardships experienced by the appellant during his period of internment were comparable to the hardships experienced by a POW in the face of the remainder of the evidence, all of which came from the appellant. Moreover, the appellant testified on four other occasions that he did not receive any physical abuse and that his psychological abuse merely consisted of a questioning by Swiss officials after he was shot down. This questioning, as well as the detention, was required by international law from a neutral nation when interning a combatant of a warring nation in a conflict in which they (the Swiss) were neutral. In conclusion, even if the Board erred in failing to specifically reference the 1993 POW report, I would that this error fits squarely within the meaning of nonprejudicial error.

For these reasons, I cannot join in the holding of the majority.